No. 14,693.

Eisenhardt, Assignee *v.* Lowell, Executrix.
(98 P. [2d] 1001)

Decided January 29, 1940.

418

Mr. WILLIAM A. BRYANS, Mr. ALBERT J. GOULD, for plaintiff in error.

MARY F. LATHROP, GUNHILD I. NESS, for defendant in error.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

THE county court having concluded that the decedent's widow, as survivor of a joint tenancy with her husband therein, was the sole owner of 200 shares of the common stock of the Great Western Sugar Company, denied the petition of plaintiff in error, as a creditor of the deceased husband's estate, which otherwise was insolvent, to have one-half of the said stock listed as an asset thereof. Plaintiff in error seeks a reversal of the judgment below upon the ground that no estate in joint tenancy in the said stock ever was created. Although inferentially suggested by arguments of counsel for plaintiff in error, neither the record nor the nature of the proceeding permits inquiry into, or conclusion upon, the question of whether the genesis of the challenged tenure renders it vulnerable to attack as being fraudulent against creditors. We, therefore, confine our discussion and decision to the single issue submitted.

██ When the joint tenancy, if there was such, had its inception and the survivorship arose, if ever, there was no statute in Colorado directly pertinent to joint tenancies in corporate stocks. Subsequently to the happening of these alleged events the general assembly enacted, and the governor approved, laws relating to joint tenancies in personal property of the type involved in this proceeding (chapter 186, S. L. 1937, chapter 87, S. L. 1939), under the terms of which there could be little room to question the validity of the joint tenancy here asserted. Notwithstanding and without considering

the retroactive effect of these statutes to joint tenancies existing at the time of their enactment, it seems certain that in no event can they have application to a situation where, as here, the alleged survivorship already had occurred at the time of their passage. 33 C. J., p. 902. As analogously pertinent, see 14 Am. Jur., p. 85, §13. However, and not withstanding the presumption against joint estates, it is well settled in Colorado that independently of statutory authorization, joint tenancies, with the incident of survivorship, may obtain as to personal property. *Miller v. American Bank & Trust Co.*, 71 Colo. 346, 206 Pac. 796. This is the general rule in practically all jurisdictions. 14 Am. Jur., p. 81, §10; 33 C.J., p. 906, §8.

■ The certificates in question recite that Harriette H. Lowell (the widow), and Osroe W. Lowell (her deceased husband), "as joint tenants with right· of survivorship and not as tenants in common" are the owners of the stock represented thereby. These quoted words, meeting, as they do, even the strict requirements of our statute relating to the creation of a joint tenancy in real estate ('35 C. S. A., c. 40, §4.), adopted as the technical criterion of sufficiency as relating to both real and *personal property* in *Estate of Kwatkowski,* 94 Colo. 222, 29 P. (2d) 639, amply proclaim a joint tenancy and upon their face the certificates must be considered as accomplishing that result. While tacitly recognizing this situation, the plaintiff in error contends that here the evidence discloses certain deficiencies and obstacles which legally preclude the creation or existence of the joint tenancy. The record discloses that in 1928 the Great Western Sugar Company issued two certificates each for 100 shares of its common capital stock to Osroe W. Lowell individually. There is nothing in the record suggesting that this stock was purchased by Mr. Lowell other than with his own funds. Early in the month of December, 1936, at his home, Mr. Lowell, who was in poor health, requested Mr. Ralph E. Smith, sales manager for Earl M. Scanlon & Company, dealers in invest-

ment securities, with whom he was well acquainted, to effect a transfer of the stock in question to Mr. and Mrs. Lowell as joint tenants. Mr. Lowell then affixed his signature, the genuineness of which is not challenged, to the blank assignments appearing on the reverse of the certificates and delivered them to Mr. Smith, who carried them to his office and there requested another employee of the company to attend to the details of the projected transfer. The latter employee, in the name of Earl M. Scanlon & Company, by appropriate endorsement guaranteed the signature of Mr. Lowell on the assignments and transmitted the certificates to the Great Western Sugar Company with written request for transfer to Mr. and Mrs. Lowell in joint tenancy. The official of the latter company in charge of its stock transfers inserted in the blanks of the printed assignment the names of Mr. and Mrs. Lowell as transferees, the number of shares, the date, added his name and another in the power of attorney clause and following the name of the transferees stamped the words "as joint tenants with right of survivorship and not as tenants in common." The new certificates then were issued in this form and returned to Scanlon & Company. Thereafter Mr. Smith delivered the new joint tenancy certificates to Mr. Lowell at his home, at which time the latter signed a receipt therefor. Mr. Lowell died in April, 1937, and after his death the joint tenancy certificates were found in his safety deposit box. Mrs. Lowell was not present at the time of the conversation between her husband and Mr. Smith and the record contains no intimation that she knew of the questioned transaction until after his death.

██ As procedurally precluding the creation of a joint tenancy the plaintiff in error relies upon the circumstances that when Mr. Lowell affixed his signature to the assignments, the blanks therein were not filled in and that neither the clerk guaranteeing his signature thereon nor the agent making the transfer saw him sign or knew that he had, nor had either personal directions

from him as to the identity of the transferees or the tenure by which they were to hold. No authorities are cited in support of this theory. If it be considered, as plaintiff in error assumes, that the joint tenancy depended upon the sufficiency of the assignments and the transfer of the original certificates, the contention is without merit. Whatever the infirmities, if any there were, in the complex machinery of accomplishment, the result, as evidenced by the new certificates delivered to Mr. Lowell, was in precise accord with his initially expressed intention and his action in accepting, receipting for and retaining them amounted to a ratification of the acts of the various agents engaged in the process. If, on the other hand, where, as here, there is no evidence of fraud, undue influence or mental deficiency, the unequivocal declarations of the new certificates are taken as prima facie disclosing the apparent intention of Mr. Lowell to create a joint estate and the formalities attendant to the transfer of the old certificates are viewed as being identical, the same result is attained, since no proof was offered rebutting this expressed intent although, no statute precluding, evidence with relation thereto would be admissible. *Houle v. McMillan*, 83 Colo. 216, 263 Pac. 409.

█ Plaintiff in error next asserts, and this without reference to intent to create, that the alleged joint tenure must fail because there was no delivery to Mrs. Lowell of the new certificates which, after their issuance and until her husband's death, appear to have remained in his possession.

In the field of reported cases those most analogous to the proceeding before us relate to questions of survivorship in bank deposits in the name of a deceased depositor and another. These cases, multitudinous in number and diverse as to conclusion, are assembled and expertly commented upon in annotations in L. R. A. 1917C, 550; Annotated Cases, 1916D, 520, and 48 A. L. R. 189. In cases where, as here, the personalty in question origi-

nally belonged to the decedent, and there is no claim of a valuable consideration for the creation of the alleged joint estate, some courts regard the right of the survivor to the property to be established if there was a clear intent to create a condition embracing the essential elements of a joint estate. Typical of this line of authorities are: *Ervin v. Felter,* 283 Ill. 36, 119 N. E. 926, L.R.A. 1918E, 776; *Chippendale v. North Adams Savings Bank,* 222 Mass. 499, 111 N. E. 371; *New Jersey Title G. & T. Co. v. Archibald,* 91 N. J. Eq. 82, 108 Atl. 434; *Deal's Adm'r v. Merchants & M. Savings Bank,* 120 Va. 297, 91 S. E. 135, L. R. A. 1917C, 548. Generally the courts have held that the title of the survivor must rest upon a gift or trust. In *First Nat. Bank v. Mulich,* 83 Colo. 518, 266 Pac. 1110, a joint tenancy in a bank deposit with right of survivorship was sustained on the premise of a gift in praesenti though enjoyment by the donee was postponed. In that case, as here, the alleged donor in the first instance was the sole owner of the personalty involved; also analogously the claimed joint tenancy was created by the sole act of the donor without the payment of valuable consideration by the donee beneficiary. There it was held that the donor's use of the word "joint" in the following written directions to the bank: "I hereby request that my checking account be made joint with my brother * * * for him to check on only in case of my death," established that the transfer of a present interest was intended and that the rest of the writing sufficiently proclaimed a joint tenancy. In the case at bar Mr. Lowell's intent to so create was unequivocally apparent and there can be no doubt that the new certificates by their terms disclosed a present vested interest in the stock in Mrs. Lowell even though the right of enjoyment to the whole thereof was postponed. In the Mulich case delivery of the writing to the bank was declared to be a good delivery. By this criterion, independently of the added factor of receipt by Mr. Lowell, as a joint tenant, the lodging with the Great Western

Sugar Company of the old certificates endorsed as they were, and the request for the new in joint tenancy form and their issuance so, constituted a sufficient delivery to sustain the gift. As relating to the effect of the receipt of the securities by Mr. Lowell it may be observed that in the well considered case of *Estate of Staver,* 218 Wis. 114, 260 N. W. 655, it was held that delivery to a depositor of deposit certificates payable to depositor and a third person jointly, created legal ownership in both of such joint payees directly and further delivery of the certificates to such third person was unnecessary to entitle him thereto by right of survivorship. This case was followed and the same rule applied as to securities in *Central Wisconsin T. Co. v. Schumacher,* 230 Wis. 591, 284 N. W. 562. Proceeding upon a somewhat similar theory the Supreme Court of Utah in *Holt v. Bayles,* 85 Utah 364, 39 P. (2d) 715, held that the delivery of a bank pass book evidencing a joint tenancy to one of the joint depositors, constituted delivery to both. Obviously, the delivery having been sufficient, possession thereafter was of minor consequence. If not a proper matter of presumption from the fact of benefit without burden, the assent of, and acceptance by, the donee through her conduct appears as clearly here as in the Mulich case. We must therefore conclude that plaintiff in error's objections grounded upon the alleged lack of delivery and subsequent possession must be resolved against her in view of our pronouncements in the above discussed case of Bank v. Mulich. As to these points, the same result would attain if the theory of contract for benefit of third party, approved as the alternative ground for affirmance in the Mulich case, be applied in the case at bar.

■ Upon the assumption that a joint tenancy cannot be created by a conveyance by the owner of the property to himself and another, plaintiff in error finally contends that such tenure could not result here. As previously stated the joint tenancy in the case at bar had

for its basis a valid gift inter vivos as well as the contract evidenced by the new certificates under which the Great Western Sugar Company became obligated to the extent thereby disclosed to both donor and donee and the survivorship did not rest upon *conveyance* or *transfer*. Even in the latter class of cases there is a sharp difference of opinion as to whether a joint tenancy can be created by grant by an owner to himself and another. "One view is that unity of title and unity of time are lacking in the estate created in the two grantees and therefore a tenancy in common results. Other cases, however, take the view that a joint estate may be thus created where the intention to create is clear." 14 Am. Jur., p. 83, §11. Cases on this subject are collected in an annotation in 62 A. L. R., p. 514. Failing to perceive any particular necessity for circuitous conveyance through a dummy from the owner to the intended joint tenants, we are inclined to favor the latter view, although, since it is unnecessary to a determination of the question here presented we do not expressly so hold.

We have carefully examined the other errors assigned, particularly those said to have arisen in connection with the degree of credibility to be accorded the testimony of one of the witnesses for Mrs. Lowell, and are satisfied that they are without merit. No helpful purpose would be served by their discussion.

The judgment is affirmed.