### Richmond

## GALAX SAVINGS AND LOAN ASSOCIATION

### V.

## ROBERT E. GOAD, ET AL.

December 2, 1983.

Record No. 810864.

Present: All the Justices.

*Raleigh M. Cooley; L. Harvey Neff, Jr.,* for appellant.

*W. H. Jolly (Jolly, Place, Fralin & Prillaman, .P.C.,* on brief), for appellees.

COMPTON, J., delivered the opinion of the Court.

In this banking controversy, a savings and loan association seeks to recover from two of its customers the sum the savings and loan was forced to pay a holder in due course as the result of a stop-order.

The Bank of Hendersonville, located in Hendersonville, Tennessee, filed a motion for judgment in the trial court against appellant Galax Savings and Loan Association seeking to recover, on a check, the amount of $3,995.00. The Galax Savings and Loan then filed a third-party motion for judgment against its customers, appellees Robert E. Goad and Joyce E. Goad, his wife, seeking indemnity from the Goads for any amount recovered by the Bank of Hendersonville. Based on evidence presented ore tenus and by deposition, the trial court found in favor of the Bank of Hendersonville against the Galax Savings and Loan in the amount claimed. The court also entered judgment in favor of the Goads on the third-party complaint. The latter judgment is the subject of this appeal.

The facts are undisputed. In 1978, the Goads became indebted to the National Worm Ranchers, Inc. under an agreement pertaining to the installation of worm bins and the marketing of worms. In order to pay this indebtedness, the Goads decided to draw on a savings account they maintained with the Galax Sav-

ings and Loan. On October 13, 1978, Mrs. Goad went to the savings and loan office and signed a "Withdrawal Application and Receipt" in the amount of $3,995.00, specifying that a check should be made payable to National Worm Ranchers, Inc. The savings and loan debited the Goads' account on that day and drew its check in the specified sum on its account with the First National Bank of Galax. The check subsequently was delivered to the payee, National Worm Ranchers, Inc., by Mr. Goad.

On October 20, the check was deposited by the payee in its account with the Bank of Hendersonville. The depositary bank proceeded to honor checks drawn on that account by the worm company until the funds represented by the check in question were exhausted.

On October 21, Lanny A. Kyle, president of Galax Savings and Loan, received a telephone call from a person purporting to represent the worm company. The caller stated to Kyle that the check in quesion had been lost. He requested Kyle to order payment stopped and to issue a duplicate check to replace the first one. Kyle declined to issue a new check but told the caller he would request a savings and loan employee to "call the Goads and inform them of what was going on." Kyle was suspicious that the check actually had not been lost but did not communicate his suspicions to other savings and loan employees or to the Goads.

Upon Kyle's request, Lois Higgins, office manager of the savings and loan, informed Mr. Goad that the original check had been lost and that the savings and loan would not comply with the worm company's request for a stop-order and a new check unless the Goads consented to the transaction. Goad assented, and Higgins called the First National Bank on October 23 and gave an oral order to stop payment on the original check. On the next day, Benjamin F. Nuckolls, another employee of Galax Savings and Loan, went to the First National Bank and issued a written stop-payment order. *See* Code § 8.4-403.

On the same day, October 24, Nuckolls drew a Galax Savings and Loan check on its account at the First National Bank to replace the original check. Present at Nuckolls' office were two representatives of the worm company and Mrs. Goad. The new check was handed to Mrs. Goad who handed it to the company representative. The representative requested a cashier's check. Nuckolls then accompanied the worm people to the First National Bank

where a cashier's check was issued and delivered to the company representative.

The Bank of Hendersonville first learned of the stop-order on November 3 when notified by a correspondent bank in Nashville. Failing to receive payment of the amount of the check either from the principals of the worm company, who had "skipped," or from Galax Savings and Loan, the Bank of Hendersonville instituted this suit.

Not contending that any provision of the Uniform Commercial Code definitively controls the outcome of this case, Galax Savings and Loan argues that it was "acting totally on the authority of the Goads" and that this is "a matter of agency" between these parties, "governed by the general law." *See* Code § 8.1-103. Relying on *Bruno* v. *Collective Federal Savings & Loan Ass'n.,* 147 N.J. Super. 115, 370 A.2d 874 (1977), the savings and loan argues that the equities are in its favor because it "took no action except that which it was directed and asked to do by the Goads." The savings and loan says that its "role was basically that of an agent" of the Goads. It contends that when the original check was issued, "certain rights were still available to the Goads for the amount of the check, or at least until it was cashed." It argues: "One of these rights was to stop payment thereof. One of these rights was to request Galax Savings and Loan Association to stop payment thereof." Contending that the Goads requested the stop-order, that the request was responded to by Galax Savings and Loan, and that payment of the check successfully was stopped, the savings and loan asserts that it was acting solely at the Goads' request and on their behalf, in "no way" acting for its own benefit. Thus, the savings and loan urges, the Goads are liable since it has been forced to pay the holder in due course.

We do not agree with the savings and loan and are not persuaded by *Bruno,* the case factually being inapposite. As the trial judge concluded, the evidence fails to establish that the ordinary debtor-creditor relationship, existing as to the whole account on deposit, between Galax Savings and Loan and the Goads was converted to that of principal and agent as to the funds withdrawn. *See Deal's Administrator* v. *Merchants & Mechanics Savings Bank,* 120 Va. 297, 299, 91 S.E. 135, 135 (1917).

Except when the original withdrawal document was executed by Mrs. Goad, the entire transaction was under the control of Galax Savings and Loan. Moreover, the Goads never were asked to exe-

cute a second withdrawal application prior to issuance of the replacement check, the savings and loan thus failing to seek or receive written or oral authorization to debit the Goad account a second time in the amount of $3,995.00. In short, and as the trial court decided, Galax Savings and Loan, not the Goads, set in motion and orchestrated the series of events resulting in the double payment. Thus, the savings and loan should suffer the loss and not the Goads.

Accordingly, the judgment below will be

*Affirmed.*